# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ALEXANDRIA CALLIE BAKER,**

      **Plaintiff,**

v.                                              **Case No: 6:22-cv-1179-EJK**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## ORDER[1]

This cause comes before the Court on Plaintiff's appeal of an administrative decision denying her application for Child's Insurance Benefits ("CIB")[2], alleging September 7, 2003, as the disability onset date. (Tr. 15.) In a decision dated August 27, 2021, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 15–30.) Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the administrative record, the parties' memoranda (Docs. 18, 23, 24), and the applicable law. For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision.

---

[1] On October 20, 2022, both parties consented to the exercise of jurisdiction by a magistrate judge in this case. (Doc. 13.) Accordingly, the case was referred to the undersigned by an Order of Reference on October 24, 2022. (Doc. 15.)

[2] A claimant becomes eligible for CIB based on demonstrating disability prior to their 22nd birthday. If disability is established, benefits are paid based on the earnings record of a parent who is disabled, retired, or deceased. *See* Social Security Administration, Benefits for Children, Publ'n No. 05-10085 (June 2022), https://www.ssa.gov/pubs/EN-05-10085.pdf.

## I.   ISSUE ON APPEAL

Plaintiff's sole issue on appeal is whether the ALJ's mental Residual Functional Capacity ("RFC") is contrary to law and not supported by substantial evidence "because it is based on unsupported rejections of assessments made by Plaintiff's treating sources and SSA's own reviewing physicians, and highly selective references to, and mischaracterization of, the record." (Doc. 18 at 1.)

## II.   STANDARD OF REVIEW

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is de novo." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   ANALYSIS

Plaintiff's argument on appeal is that the ALJ erred in determining Plaintiff's RFC to perform light work with additional limitations because the ALJ failed to fully credit the (1) State Agency administrative findings, and (2) opinions of Michelle Lopez, LCSW, regarding Plaintiff's mental limitations. (Doc. 18.) Essentially, Plaintiff argues that the ALJ did not provide an adequate explanation for discounting these two

medical sources. The Commissioner responds that the ALJ adequately evaluated the supportability and consistency of these findings and opinions, and the ALJ's RFC assessment is otherwise supported by substantial evidence. (Doc. 23.) The Court addresses each opinion in turn.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). SSR 96-8p provides that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" which "means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that the RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments").

In determining the claimant's RFC, the ALJ must consider all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012) ("Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.").

Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 1520c(a); 416.920c(a). Rather, the Commissioner must

"consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* To that end, the Commissioner considers five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[3] 4) specialization; and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c); 416.920c(c).

The most important of these factors are supportability and consistency, and the ALJ must explain the consideration of those two factors. *Id.* §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors (i.e., relationship with claimant, specialization, and "other factors"). *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. *Id.* §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

---

[3] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)– (v).

*Id*. In sum, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

Additionally, pursuant to the new regulations, a "medical opinion" is defined as "a statement from a medical source about what [the claimant] can still do despite [his/her] impairment(s)" and whether the claimant has any "impairment-related limitations or restrictions" regarding certain enumerated abilities. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). A "medical opinion" does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* §§ 404.1513(a)(3); 416.913(a)(3) (defining these categories of information as "other medical evidence"); *see also Rice v. Kijakazi*, No. 4:20-cv-01414-RDP, 2021 WL 3473219, at *5 (N.D. Ala. Aug. 6, 2021) ("Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations.").

Here, the ALJ made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). However, the claimant cannot ever climb ladders, ropes, and scaffolds. The claimant cannot work at unprotected heights. She also cannot operate a motor vehicle. **The claimant will be limited to performing only simple tasks, and making only**

> **simple work-related decisions. The claimant can only frequently interact with supervisors. She can only occasionally interact with coworkers and the general public.**

(Tr. 21) (emphasis added). Plaintiff's arguments are asserted only against the mental portion of the RFC, so that is all the undersigned will evaluate in this appeal.

### A. State Agency administrative findings

On January 26, 2018, at the initial level, and on June 26, 2018, at the reconsideration level, Plaintiff's records were evaluated by State Agency administrative doctors to determine Plaintiff's disability. (Tr. 63–75 (Ex. 2A), 76–90 (Ex. 3A).) Although both of these doctors, at their respective consideration levels, concluded Plaintiff was not disabled, they made findings relative to Plaintiff's mental limitations in their analysis. (*Id.*)

The ALJ found parts of the State Agency administrative doctors' findings persuasive and other parts less so. The ALJ stated:

> The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c. Doctors for Disability Determination Services have provided several "prior administrative medical findings" (2A; 3A). . . . **Regarding her mental functioning, these doctors in their first statement said that the claimant will be able to perform only simple, routine tasks (2A). They also said, though, that she can adapt to only simple and gradual changes in the work environment (2A). These writers said too that the claimant would be capable of engaging in only "brief, structured interactions with others… with only minimal social interaction" (2A). In their second assessment (3A), these doctors said that the claimant can perform only simple and routine directions and tasks.**

**These writers also said, though, that the claimant will "function best at tasks with little to no social demands for communicating with others." They also said that the claimant can adjust to only infrequent changes (3A). The statements in exhibits 2A and 3A are somewhat persuasive. Those articulations are first somewhat supported. At least some of these articulations were nonspecific, belying their supportability. These doctors also never personally examined the claimant.**

However, these writers did explain their conclusions. These writers did not review the claimant's whole instant documentation of record. However, they did evidence a good understanding of the claimant's then-current medical evidence of record. Further, these providers' physical conclusions are broadly consistent with the medical evidence of record, including Dr. Dattani's observations of the claimant ambulating normally (5F). **However, excepting their assessment regarding simple tasks, the Administrative Law Judge specifically finds these writer's psychological assessments not persuasive. These doctors' psychological assessments are generally not consistent with the medical evidence of record, including notations of the claimant revealing normal judgment and insight (3F/14; 4F/20, 42; 6F/23, 25; 12F/2; 14F/76, 88). These doctors' psychological assessments are also generally not consistent with, e.g., observations of the claimant maintaining normal eye contact (2F/2; 6F/16; 7F/6; 11F/18; 14F/29, 97), and speaking normally (2F/2; 7F/6; 12F/2; 14F/20, 88). These doctors' psychological assessments are also not consistent with descriptions of the claimant's thought processes as intact and coherent (13F/5), and logical (6F/17; 11F/19; 14F/19-20, 30, 98). The Administrative Law Judge does find persuasive these writers' limitation to simple tasks**: that particular limitation is consistent with, e.g., observations of the claimant revealing normal and intact memory (3F/14, 28; 4F/20, 27; 4F/42; 5F/9; 6F/23; 12F/2; 14F/20, 76). Otherwise, however, the Administrative Law Judge specifically finds not persuasive these writer's psychological assessments.

(Tr. 26–27) (emphasis added). Thus, the ALJ did not find the doctors' assessments of Plaintiff's mental state to be completely persuasive.

The Court now turns to how the ALJ considered the persuasiveness of these medical opinions. Under the new regulations, "supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to lack of supportability, the ALJ found the opinions "somewhat supported." (Tr. 26.) For her rationale, the ALJ stated that "some of these articulations were nonspecific," the doctors never personally examined Plaintiff, and they did not review Plaintiff's whole record. (Tr. 26–27.) However, she noted that the doctors did explain their conclusions, evidenced a good understanding of the claimant's then-current medical evidence of record, and were broadly consistent with the medical record. (*Id.*)

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ found that, excepting their assessment regarding limitations to simple tasks, the doctors' psychological assessments were not persuasive. (Tr. 27.) Specifically, the ALJ rejected the doctors' findings that Plaintiff could adapt to only simple tasks. (*Id.*) The ALJ stated that these doctors' psychological

assessments were generally not consistent with the medical evidence of record, including notations of having normal judgment and insight, maintaining normal eye contact and speaking normally, having intact and coherent thought processes, and having intact and normal memory. (*Id.*)

In general, Plaintiff takes issue with the ALJ's citation to the medical records, asserting that the ALJ took an overly simplistic view of Plaintiff's mental limitations. However, it is not the Court's role to review each of these records to determine whether the ALJ's analysis was adequate. This is because the ALJ's consideration of the State Agency administrative doctors' opinions comports with the requirement of the new Social Security Regulations as it relates to supportability and consistency. Under the applicable regulations, the ALJ was required to articulate *how* she considered the factors of supportability and consistency in discussing the persuasiveness of state agency administrative findings. And she did so here.

The ALJ discussed the supportability of the administrative doctors' opinions (i.e., that their opinions were somewhat supported) as well as the consistency of the opinions with the record (i.e., that their opinions were contradicted by the medical evidence of record). *See, e.g.*, *Moberg v. Comm'r of Soc. Sec.*, No. 6:19-cv-891-Orl-LRH, 2020 WL 4936981, at *4 (M.D. Fla. Aug. 24, 2020) (finding that the ALJ's consideration of medical opinions "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of each medical opinion and determined whether such opinion was supported by the weight of the record evidence"). What Plaintiff is really

asking the Court to do is reweigh the evidence with regard to the ALJ's consideration of these opinions, which is not within the province of this Court. Because the ALJ's decision is supported by substantial evidence, the Court rejects Plaintiff's contentions as it relates to the ALJ's consideration of the State Agency administrative doctors.

### B. Michelle Lopez, LCSW

Ms. Lopez met with Plaintiff in July 2020 and completed a form opinion stating that Plaintiff had a wide array of functional limitations regarding Plaintiff's ability to work. (Tr. 690–93.) Additionally, Ms. Lopez wrote an undated letter on Plaintiff's behalf, opining that Plaintiff experienced severe impairments in social and occupational functioning and could not tolerate the stress and pressure of work. (Tr. 798.)

Regarding Ms. Lopez's opinions, the ALJ found:

> The opinions [of] Michelle Lopez, LCSW, are not persuasive (13F; 15F). Ms. Lopez first completed a form opinion assessing the claimant's functioning in July 2020 (13F). Ms. Lopez in this form assessed significant restrictions across a wide array of functional abilities, assessing "Category IV" limitations (precluding performance fifteen percent or more of a day) in, e.g., the claimant's ability to interact with the public, get along with coworkers without distract [sic] them, and maintain appropriate behavior. Ms. Lopez in this form further said that the claimant would likely be absent from work five or more days per month (13F). Ms. Lopez then wrote an undated letter on the claimant's behalf at Exhibit 15F. This letter indicates that the claimant experiences "severe" impairments in "social and occupational" functioning. This letter further indicates that the claimant cannot tolerate "the stress and pressure" of work (15F). These statements are not persuasive. **These conclusions are first not well supported. These documents first do not evidence consideration of**

> **the claimant's whole instant documentation of record. Rather, the documentation of record contains treatment notes from Ms. Lopez primarily only over a limited period of time. These statements are also not well explained. Further still, many of these conclusions are nonspecific, again belying their supportability. Additionally, these conclusions are inconsistent with the objective documentation of record, including observations of the claimant revealing adequate grooming (e.g., 4F/42; 14F/80, 84, 88). These conclusions are also inconsistent with, e.g., observations of the claimant revealing a normal mood and affect (e.g., 3F/14; 4F/20; 10F/5, 15; 12F/1-2; 14F/15, 19-20, 69; 16F/6). These conclusions are also broadly inconsistent with sources' same observations of the claimant revealing normal and intact judgment and insight (3F/14; 4F/20, 42; 6F/23, 25; 12F/2; 14F/76, 88).**

(Tr. 27) (emphasis added).

Plaintiff again argues that the ALJ's stated rationale for rejecting Ms. Lopez's opinion is inadequate. Specifically, Plaintiff argues that the information the ALJ does cite in support of her conclusion does not establish the required "logical bridge" between the evidence and ALJ's findings, due to its highly selective nature and inapt references to the record. (Doc. 18 at 15.) Plaintiff acknowledges, however, that the ALJ fully credited Plaintiff's diagnoses of major depressive disorder and anxiety. (Doc. 18 at 10); (Tr. 22 ("[T]he medical evidence of record shows that the claimant is affected by bipolar disorder with depressive disorder, and anxiety disorder.")). But Plaintiff takes issue with the ALJ's assessment of how much these limitations should impact Plaintiff's ability to work.

As to supportability, the ALJ found Ms. Lopez did not evidence consideration of Plaintiff's entire medical record. (Tr. 27.) Rather, the ALJ stated that Ms. Lopez's treatment notes covered only a limited period of time, were not well explained, and were nonspecific. (*Id.*) As to consistency, the ALJ found that Ms. Lopez's records were inconsistent with the objective evidence, as Plaintiff was capable of adequate grooming, had a normal mood and affect, and had normal and intact judgment and insight. (*Id.*)

Again, the undersigned concludes that the ALJ's assessment of Ms. Lopez's opinion was legally sufficient and supported by substantial evidence. The ALJ's analysis articulated the evidence affecting the supportability and consistency, in compliance with the Social Security Regulations. As the Commissioner points out, even where the evidence could support a different conclusion, the ALJ's decision must be affirmed if it is supported by substantial evidence and based on proper legal standards. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). And here, the ALJ's findings are supported by the record.

Ultimately, it is the province of the ALJ to determine Plaintiff's ability to do work. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished). And the ALJ does not have to base her RFC finding on a doctor's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (unpublished). Here, the ALJ applied the proper legal standards, provided a detailed analysis of the evidence of record, and sufficiently articulated the reasons why she did not find Ms. Lopez's opinion and the State Agency administrative doctors' findings entirely supported by

or consistent with the record evidence. Thus, the undersigned finds that the ALJ's decision is due to be affirmed.

IV. **CONCLUSION**

Upon consideration of the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. The Commissioner's final decision in this case is **AFFIRMED**.
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on August 3, 2023.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE